1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   DAVID PONTIER,                          Case No.:  21cv199-LL-DDL

12                            Plaintiff,     **ORDER:**

13   v.
                                             **(1) GRANTING JPMORGAN CHASE**
14   GEICO INSURANCE, et al.,                **BANK, N.A.'S MOTION TO**
                                             **DISMISS PLAINTIFF'S FIRST**
15                            Defendants.     **AMENDED COMPLAINT**
                                             [ECF No. 113]**;**
16

17                                           **(2) GRANTING GEICO GENERAL**
                                             **INSURANCE COMPANY'S**
18                                           **MOTION TO DISMISS**
                                             **PLAINTIFF'S FIRST AMENDED**
19                                           **COMPLAINT** [ECF No. 115]**;**
20
                                             **(3) GRANTING JOSEPH DANG'S**
21                                           **MOTION TO DISMISS**
                                             **PLAINTIFF'S FIRST AMENDED**
22                                           **COMPLAINT** [ECF No. 116]
23
24
25
26
27   / / /
28   / / /

                                      1

Before the Court are (1) Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 113]; (2) GEICO General Insurance Company's Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 115]; and (3) Defendant Joseph Dang's Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 116]. The three Motions have been fully briefed, and the Court finds them suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1).[1] For the reasons stated below, the Court **GRANTS** JPMorgan Chase Bank, N.A.'s Motion to Dismiss; **GRANTS** GEICO General Insurance Company's Motion to Dismiss; and **GRANTS** Joseph Dang's Motion to Dismiss.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff David Pontier, proceeding pro se, filed a complaint in federal court in Nevada on August 5, 2020 against GEICO General Insurance Company ("Geico"),[2] Farmers Insurance, JPMorgan Chase Bank, N.A. ("Chase"), Phia Group, LLC, the State Bar of California, the State of California, Joseph Dang ("Dang"), Glenn C. Nusbaum ("Nusbaum"), Kevin Yoo ("Yoo"), and Paul E. Kim, M.D. Inc. ("Kim") alleging conversion, bad faith, fraud, and violations of the federal Fair Debt Collection Practices Act ("FDCPA"). ECF No. 1.

On November 16, 2020, Chase filed a motion to dismiss. ECF No. 7. On November 19, 2020, Geico filed a motion to dismiss. ECF No. 9. Before they were ruled on, the

---

[1] Plaintiff filed a Request for Oral Argument "to help the trial court distinguish which evidence of the over 1000 documents is relevant to factual finding." ECF No. 137 at 3. The Court DENIES the request because it finds the fully briefed Motions sufficient without oral argument. *See* Fed. R. Civ. P. 78(b); S.D. Cal. CivLR 7.1(d)(1).

[2] GEICO General Insurance Company was sued erroneously as GEICO Insurance. ECF No. 115 at 2.

Nevada court ordered the matter to be transferred to this district on February 1, 2021 under the "first-to-file" rule due to the related interpleader case of *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal.) filed on August 13, 2019 in this district. ECF No. 24; Complaint, *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal. Aug. 13, 2019), ECF No. 1. After the transfer, Geico filed a motion to dismiss on February 30, 2021 [ECF No. 30], and Chase filed a motion to dismiss on February 22, 2021 [ECF No. 36].

On April 22, 2021, this case was stayed. ECF No. 53. The stay was lifted on about November 29, 2023. ECF No. 56.

On December 8, 2023, the Court granted Plaintiff's motion for voluntary dismissal of Defendants Kim, Yoo, and Nusbaum. ECF No. 58.

On March 5, 2024, Plaintiff filed a motion to amend his complaint because the motions to dismiss filed by Chase and Geico "indicated that they would not answer as some of the claims did not refer to them." ECF No. 91 at 3. On March 28, 2024, the Court granted Plaintiff's motion to amend the complaint in order "to separate the claims and indicate which claims are asserted against which Defendants." ECF No. 102. The order also contained specific instructions and guidance to Plaintiff regarding the rules applicable to the formatting and substance of an amended complaint. *Id.*

On May 3, 2024, Plaintiff filed a First Amended Complaint ("FAC"). ECF No. 110.

On May 28, 2024, Defendants Nusbaum, Yoo, and Kim were dismissed without prejudice from this matter. ECF No. 125.

The instant Motions to Dismiss the FAC filed by Chase, Geico, and Dang were filed in May 2024. ECF Nos. 113, 115, 116. In addition to the normal briefings for the Motions to Dismiss, Plaintiff filed a twenty-six-page document captioned as "Response to Defendant GEICO Insurance Motion to Dismiss Hearing" but actually contains arguments that Chase, Geico, and Dang "fail to deny Plaintiff Pontier['s] claim for violation of Federal

and California RICO Statute (DKT 110, P138), requiring all (3) Motions to Dismiss be denied." ECF No. 141.[3]

### B. Factual Allegations

The following factual allegations are from Plaintiff's FAC.

This action arises from a car accident involving Plaintiff on March 18, 2012, in which Dang was Plaintiff's attorney in the resulting personal injury lawsuit. FAC at 8, 37, 41. Jamal Daniels ("Daniels") was the driver of the second vehicle in the accident and he did not have enough insurance coverage to cover Plaintiff's damages. *Id.* at 81. Plaintiff had incurred at least $100,000 in medical expenses as a result of the accident. *Id.* at 41. Dang received a $50,000 check from Farmers Insurance payable to Dang and Plaintiff ("Farmers Check") as settlement of the lawsuit. *Id.* Around November 20, 2015, Dang deposited the Farmers Check into a client trust account at a Chase bank without Plaintiff's signature as co-payee through the bank ATM or other means not involving a bank teller station. *Id.* at 35–36, 43, 47, 59.

Around November 25, 2015, Dang withdrew $16,500 from the Farmers Check funds as attorney fees. *Id.* at 45. Dang had signed a contingency fee agreement contract that required the $33,500 balance of the settlement funds to be disbursed to Plaintiff within six weeks of initial disbursement but failed to do so. *Id.* at 48–49. Defendant Phia Group entered into a written agreement with Dang to reimburse them $35,000 from the Farmers Check for medical services covered under Plaintiff's medical insurance, which was disbursed in October 2018. *Id.* at 46.

---

[3] This additional filing in opposition to the three Motions to Dismiss contains twenty-three substantive pages, which when combined with Plaintiff's other Oppositions exceeds the twenty-five-page limit. S.D. CivLR 7.1(h). The Court did not give leave to exceed the page limit, and so the Court did not consider this additional response filed in violation of Civil Local Rule 7.1(h). *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (finding self-represented litigants must follow the same rules of procedures that govern other litigants) (citation omitted).

At the time of the accident, Plaintiff had an automobile insurance policy with Geico that included uninsured/underinsured motorist coverage of $100,000. *Id.* at 69–71. Plaintiff had two vehicles on the Geico policy. *Id.* Around November 12, 2015, Dang "submitted to [Geico] a modified unwitnessed copy of the Farmers Insurance settlement release dated 11/12/2015." *Id.* at 50. Around either July 1, 2016 or August 1, 2016, Dang moved his office without notice to Plaintiff. *E.g., id.* at 60, 67, 96, 115, 117–18, 120. Dang disappeared with the funds and avoided contact with Plaintiff between August 12, 2016 and November 6, 2017. *Id.* at 197. Dang filed a claim around either July 28, 2016 or August 1, 2016 on Plaintiff's underinsured motorist Geico policy for $50,000. *Id.* at 49, 200. Dang received a $50,000 check from Geico ("Geico Check") around August 12, 2016, and maintained sole control over it until around October 26, 2018. *Id.* at 51. Dang concealed receipt of the Geico Check from Plaintiff. *Id.* at 40. Around August 12, 2016, Dang deposited the Geico Check without Plaintiff's required signature in his client trust account at a Chase bank through the bank ATM or other means not involving a bank teller station. *Id.* at 58, 59.

Plaintiff alleges that Dang concealed disbursements to himself and refused other disbursements due to medical liens. *Id.* at 50, 55. Plaintiff alleges that Dang concealed disbursement of $5,000 to himself around November 16, 2016, which required Dang to disburse all remaining funds to Plaintiff within six weeks of first disbursement but failed to do so. *Id.* at 67. Plaintiff alleges that Dang was under contract to provide Plaintiff with an accounting of all expenses approximately every sixty days but never did so. *Id.* Plaintiff "sent a complaint for conversion fraud to the San Diego District Attorney Office which was forwarded unfiled to Defendant The Bar Association of California." *Id.* at 56. On September 6, 2017, Plaintiff fired Dang for abandonment of representation and requested Dang return the $100,000 "so that Plaintiff Pontier could return funds to Defendant GEICO and Defendant Farmers and proceed with trial." *Id.* at 56.

/ / /

/ / /

/ / /

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). That is not to say that

the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)). However, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court may deny leave to amend where an amendment would be futile. *Desoto*, 957 F.2d at 658 (citation omitted).

## III.    CHASE MOTION TO DISMISS

Plaintiff asserts the following claims against Chase: (1) conversion pursuant to California Uniform Commercial Code section 3420 as to the Farmers Check [FAC at 35–36]; (2) fraud as to the Farmers Check [FAC at 36–37]; (3) conversion as to the Geico Check pursuant to California Uniform Commercial Code section 3420 [FAC at 38]; (4) fraud as to the Geico Check [FAC at 39; 56–67]; and (5) violation of California RICO statute [FAC at 151–52][4].

/ / /

/ / /

---

[4] *See infra*, Section V.C. The Court notes that the index of claims table in the FAC does not list any defendants subject to Plaintiff's RICO claim, nor is the page cite accurate.

### A.   Conversion Claims

Plaintiff claims that Chase accepted the deposit of the Farmers Check and Geico Check without his endorsement as a co-payee. Chase argues that Plaintiff's conversion claims are time-barred because the applicable statute of limitations is three years. ECF No. 113 at 11. Chase also argues that even if the claims were not time-barred, Plaintiff's stated damages are not recoverable from Chase. *Id.* at 16.

### 1.   Statute of Limitations

Section 3420 of California's Uniform Commercial Code "provides a statutory remedy for a bank's improper deposit of a check without the authorized endorsement of all required payees." *Wells Fargo Bank NA v. Kuhn*, No. CV 13-7913 GAF (FFMX), 2014 WL 12560869, at *2 (C.D. Cal. Feb. 5, 2014) (citation omitted). Section 3420 displaces a common law claim for conversion. *Id.* A conversion claim under Section 3420 must be brought within three years after the cause of action accrues. Cal. Com. Code § 3118. A conversion claim accrues when "a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (2006), *as modified* (Oct. 30, 2006) (quoting Cal. Com. Code § 3420(a)).

The Court finds the conversion claim for the Farmers Check accrued on November 20, 2015, and the Geico Check conversion claim accrued on August 12, 2016, which are the dates when the checks were deposited in Dang's client trust account. Therefore, any conversion claim had to be filed within three years, which was November 2018 for the Farmers Check and August 2019 for the Geico Check. *See* Cal. Com. Code § 3118. However, this lawsuit was initiated on August 5, 2020, after the claims expired.

Plaintiff argues that he did not discover that his required signature was missing on the checks until March 20, 2020 when he received copies by subpoena.[5] ECF No. 135 at

---

[5] The FAC claims Plaintiff became aware on March 20, 2020, but his Opposition states March 11, 2020.

2; FAC at 11, 51, 61. When a "discovery rule" exception applies in a conversion claim, "the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion." *AmerUS Life Ins. Co.*, 143 Cal. App. 4th at 639 (citations omitted). In a conversion claim, the discovery rule only applies "when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff." *Id.*

To show fraudulent concealment, the plaintiff must prove that "(1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as it did if it had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage." *New World Mortg. v. TD Bank*, No. CV1100755DMGOPX, 2012 WL 13014965, at *2 (C.D. Cal. Jan. 3, 2012) (citing *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007)).

The Court finds the discovery rule does not apply to toll the statute of limitations as to the conversion claims against Chase. The FAC states that Dang deposited the Farmers Check and Geico Check through the bank ATM or some method that avoided a bank teller, and that Chase provided copies of the checks to Plaintiff when subpoenaed. Plaintiff alleges that Chase failed to properly supervise employees charged with verifying checks are properly endorsed by all required payees and failed to properly audit check deposits. FAC at 43–44, 52, 60. These allegations do not show that Chase intentionally concealed or suppressed the lack of Plaintiff's endorsement on the checks to defraud Plaintiff. Nor does the Court find that Chase had a duty to disclose or a fiduciary duty to Plaintiff, a noncustomer. *See New World Mortg.*, 2012 WL 13014965, at *2 ("As a general matter, a bank does not owe a duty of care to a noncustomer, and the relationship between a bank and its depositor is not fiduciary in character." (citations omitted)).

Accordingly, the Court DISMISSES the conversion claims as to Chase as time-barred and without leave to amend because the allegations of other facts could not cure the deficiency, particularly the lack of duty to disclose, and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

### 2.    Demand for Relief

Chase argues that Plaintiff cannot recover any damages from it for the conversion claims because he has already been awarded his interest in the checks in the related interpleader case, and so cannot state a claim upon which relief may be granted. ECF No. 113 at 16–17.

As a preliminary matter, the Court notes Chase filed a Request for Judicial Notice of two court orders filed in the related interpleader case of *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal.). ECF Nos. 113-1, 113-2. Plaintiff filed an Opposition, arguing that reliance on the orders in the interpleader case is premature because of the following pending motions in that case: motion to dismiss; motion for sanctions; motion for change of venue; and motion for default, request for jury trial to determine damages.[6] ECF No. 133 at 2. However, since Plaintiff filed his Opposition, his motion to dismiss and motion for change of venue were denied by the Court. ECF No. 220. The Court may take judicial notice of its own records, and also finds the orders are readily verifiable matters of public record and the proper subject of judicial notice. *See United States v. Author Servs., Inc.*, 804 F.2d 1520, 1523 (9th Cir. 1986), *amended,* 811 F.2d 1264 (9th Cir. 1987), and *overruled in part on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997) (citations omitted); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public

---

[6] Plaintiff describes his motion to dismiss filed on March 12, 2020 as pending, but it was denied as moot on July 22, 2020. *See* ECF Nos. 49, 98. Plaintiff appealed the order denying the motion to dismiss as moot to the U.S. Court of Appeals for the Ninth Circuit, but it was dismissed for lack of jurisdiction on September 23, 2024. ECF Nos. 206, 218, 224.

record."). The pending motions in the interpleader case do not alter this determination. Accordingly, the Court **GRANTS** Chase's Request for Judicial Notice of the following orders in the interpleader action: (1) Order Granting Plaintiff's Motion for Interpleader Discharge and Interpleader Disbursement filed on December 15, 2020 [ECF No. 113-2 at 5–10] and (2) Order Granting in Part and Denying in Part Counterdefendant Dang's Motion for Summary Judgment and Denying Counterplaintiff Pontier's Amended Motion for Summary Judgment filed December 18, 2020 [ECF No. 113-2 at 12–41].

California's Uniform Commercial Code limits recoverable damages in a conversion claim to the amount of the plaintiff's interest in the instrument. Cal. Com. Code § 3420 ("[T]he measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument."); *see also id.* § 1305 ("The remedies provided by this code shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special damages nor penal damages may be had except as specifically provided in this code or by other rule of law."); *Stenseth v. Wells Fargo Bank*, 41 Cal. App. 4th 457, 466 (1995) ("[I]n conversion actions involving negotiable instruments a defendant is liable for the amount payable on the instrument, but a plaintiff may only recover for that portion of the instrument in which he has an interest.").

The face value of the two checks totals $100,000. A review of the judicially-noticed orders in the related interpleader case brought by Dang show that the two checks were the underlying basis of the interpleader action and that Plaintiff's interest in the two checks was $32,764.62 after proper disbursements, which included $10,438.13 disbursed to Plaintiff on October 24, 2019. ECF No. 113-2 at 5–10, 17. When the Court granted the motion for interpleader discharge and disbursement on December 15, 2020—years before the FAC was filed on May 3, 2024—it ordered the Clerk of the Court to pay to Pontier the amount of $32,764.62 and any interest from the funds deposited into the Court's Interest Bearing-Registry Account and invested in the Court Registry Investment System. *Id.* at 9.

The Court finds there are no recoverable damages for Plaintiff to claim for a conversion cause of action. Plaintiff has already been awarded his interest in the checks in the related interpleader case, which is the limit of the relief he may demand, and so cannot state a conversion claim upon which relief may be granted. *See* Cal. Com. Code § 3420; *id.* § 1305; *Stenseth*, 41 Cal. App. 4th at 466.

Accordingly, the Court DISMISSES the conversion claims as to all Defendants for a failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The dismissal is without leave to amend because any additional factual allegations consistent with the FAC will not change this finding, and amendment of the complaint would therefore be futile. *See Desoto*, 957 F.2d at 658 (citation omitted).

### B. Fraud Claims

Plaintiff's fraud claims against Chase are also premised on allegations that Chase accepted the Farmers Check and Geico Check for deposit without his endorsement as a co-payee. Chase argues that the fraud claims are time-barred because the applicable statute of limitations is three years. ECF No 113 at 15. Chase also argues that even if the claims were not time-barred, Plaintiff's fraud claims must be dismissed because he fails to allege any false statement made by Chase or satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). *Id.*

#### 1. Statute of Limitations

The statute of limitations for a fraud claim in California is three years. Cal. Civ. Proc. Code § 338(d). "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id.* Additionally, "[e]very person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact." Cal. Civ. Code § 19. The Ninth Circuit has further explained when the statute of limitations begins to run for a fraud claim as follows:

"In cases involving fraud . . . the statute commences to run when the plaintiff discovers he has a cause of action or, through the use of reasonable diligence, should have discovered it." *Bennett v. Hibernia Bank,* 47 Cal.2d 540, 305 P.2d 20, 32 (1956). However, "the same degree of diligence is not required where a fiduciary relationship exists between the parties at the time the alleged acts of negligence occur." *Elec. Equip. Express, Inc. v. Donald H. Seiler & Co.,* 122 Cal.App.3d 834, 176 Cal.Rptr. 239, 252 (1981). Regardless, Plaintiffs have "a duty to investigate even where a fiduciary relationship exists when [they have] notice of facts sufficient to arouse the suspicions of a reasonable man." *Id.* (internal quotation marks omitted).

*Graham-Sult v. Clainos*, 756 F.3d 724, 743 (9th Cir. 2014).

Plaintiff claims that he was not aware that his signature as a co-payee was required on the Farmers Check and Geico Check until he obtained copies of the checks in March 2020 by subpoena to Chase. FAC at 51–52, 61–62; ECF No. 135 at 2, 8. Plaintiff alleges that around July 1, 2016, Dang told Plaintiff that his signature was not required to deposit the Farmers Check. FAC at 47. Dang allegedly also told Plaintiff that had his signature been required to deposit the Farmers Check, Chase would not have accepted it. *Id.* That Chase accepted the Farmers Check without Plaintiff's signature "influenced Plaintiff not to question the legality" of the check's deposit. *Id.* at 52. Plaintiff claims that Dang concealed the receipt of the Geico Check from him. *Id.* at 65.

The Court cannot find as a matter of law at this time that Plaintiff's fraud claims as to Chase regarding the Farmers Check and Geico Check are time-barred. This finding is specific to the allegations regarding Plaintiff's required signature as co-payee. Plaintiff has sufficiently alleged that he was not aware that his signature was required on the two checks until he received copies of the checks in March 2020 due to his reliance on assurances from his attorney. *See Graham-Sult*, 756 F.3d at 743. Therefore, his complaint filed on August 5, 2020 was within the three-year statute of limitations for the fraud claim.

### 2.    Pleading Requirement

Chase argues that Plaintiff fails to allege that Chase made any false statements or that he relied on any misrepresentation by Chase to his detriment, and that he fails to meet the heightened pleading standard for fraud. ECF No. 113 at 15–16. Plaintiff argues that he

adequately pleaded that Chase fraudulently concealed its acceptance of the Farmers Check and Geico Check without Plaintiff's required signature. ECF No. 135 at 2, 5. Chase replies that Plaintiff fails to provide any facts supporting fraudulent concealment regarding what or how anything was concealed. ECF No. 139 at 5.

To state a claim for fraud, the following elements must be proven: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003) (internal quotation marks and citation omitted). The Federal Rules of Civil Procedure state that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false." *Puri v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). "Allegations of fraud based on information and belief may suffice as to matters peculiarly within the opposing party's knowledge, so long as the allegations are accompanied by a statement of the facts upon which the belief is founded." *Puri*, 674 F. App'x at 687; *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citations omitted).

Under California law, which applies here in this diversity case, the elements of fraudulent concealment are: "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011–12 (9th Cir. 2011), *as amended* (Aug. 19, 2011) (citation omitted); *see also Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40 (2024) (citations omitted).

/ / /

The Court finds Plaintiff has failed to sufficiently plead fraudulent concealment. Plaintiff does not adequately allege that Chase concealed the lack of Plaintiff's signature on the checks or concealed it with an intent to defraud. Plaintiff claims in the FAC that the checks were both deposited through a bank ATM or other means that did not involve a bank teller. Plaintiff alleges that Chase failed to properly audit check deposits and to properly supervise employees in verifying check deposits contained checks endorsed by all required payees. FAC at 60. He also claims that Chase provided copies of the checks when requested through subpoena. These are not indications of concealment or an intent to defraud. Additionally, Plaintiff does not claim that Chase had a duty to disclose to Plaintiff. As discussed above, Chase has no fiduciary duty to Plaintiff, a noncustomer. *See New World Mortg.*, 2012 WL 13014965, at \*2.

The Court is not persuaded by Plaintiff's allegations that Chase accepted other checks deposited by Dang without co-payee signatures between November 2015 and May 2017. ECF No. 135 at 3–4; FAC at 154–57. Plaintiff alleges that the acceptance of these other checks "proves this was a planned operation not a onetime accident." FAC at 156. The Court finds the conclusion to be speculative and insufficient to show an intent to defraud pursuant to Rule 9(b).

Accordingly, the Court DISMISSES the fraud claims against Chase for failure to sufficiently plead a valid claim. The dismissal is without leave to amend because the allegations of other facts could not cure the deficiency, particularly the lack of duty to disclose, and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

## IV.    GEICO MOTION TO DISMISS

Plaintiff asserts the following claims against Geico: (1) breach of contract, (2) bad faith, (3) fraud, and (4) negligence. FAC at 67–68. Plaintiff's claims are all based on Geico's alleged underpayment of insurance policy benefits for uninsured/underinsured motorist coverage. *Id.* at 70.

/ / /

/ / /

## A. Breach of Contract

The breach of contract claim originates with Plaintiff's car accident with Daniels in San Diego on March 18, 2012 in which Daniels' automobile insurance was insufficient to pay for all of Plaintiff's damages due to bodily injuries. *Id.* at 41, 72, 81. Plaintiff alleges in the FAC that Geico breached the insurance contract for policy 4017-93-04-98 (the "California Policy") by refusing to pay underinsured motorist coverage of "$100,000 as to insured car A," "$100,000 as to insured car B," and $100,000 as to insured car C" and refusing to arbitrate the disagreement. *Id.* at 80–82. Although Plaintiff alleges that he had two vehicles on the California Policy and two vehicles on policy 0475-32-24-00 (the "Nevada Policy"), his claim disputes the coverage of the California Policy. *Id.* at 72–75, 80–83. Plaintiff argues that at the time of the 2012 car accident with Daniels, he "had at minimum $100,000 uninsured/underinsured motorist's coverage on Plaintiff Pontier GEICO sub-policy 4017-93-04-98 and as much as $200,000.00" for "[t]wo autos with separate payments requiring separate claims per vehicle." *Id.* at 73 (emphasis in original).

Geico argues that the California policy—"the policy under which Plaintiff's attorney made an uninsured motorist claim"—shows the maximum amount of benefits payable to Plaintiff was $50,000, which it paid. ECF No. 115-1 at 11–12. Geico also argues that an insured is not entitled to arbitration when the policy limits have been paid. *Id.* at 14–15.

As a preliminary matter, although Plaintiff did not attach the insurance policies to the FAC, the Court takes judicial notice of the California Policy [ECF No. 115-3 at 2–25] and the Nevada Policy [ECF No. 115-3 at 28–48] because they form the basis of Plaintiff's claims against Geico and are referenced extensively in the FAC. *See Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

/ / /

/ / /

/ / /

/ / /

document forms the basis of the plaintiff's claim."). The Court notes that the California Policy has a California choice of law provision.[7] ECF No. 115-3 at 24.

The elements for a breach of contract claim are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citation omitted).

The Court finds Plaintiff has not stated a claim for breach of contract because he fails to adequately allege the element of Geico's breach. Geico paid Plaintiff $50,000 on the California Policy underinsured motorist coverage, which Plaintiff claims is less than he was owed due to the insurance coverage of his multiple vehicles. Plaintiff's California Policy plainly states that the coverage limit for uninsured/underinsured motorists is $100,000 for each person. ECF No. 115-3 at 3. In the "Limits of Liability" section, the California Policy states the following:

> Regardless of the number of autos or ***trailers*** to which this policy applies:
> 1.  The limit of liability for Uninsured and Underinsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to ***bodily injury*** sustained by one person as the result of one accident.

*Id.* at 16, ¶ 1 (emphasis in original). This provision is authorized by the California Insurance Code section on uninsured/underinsured motorist coverage, which states as follows:

> Regardless of the number of vehicles involved whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or

---

[7] To the extent that Plaintiff argues or alleges that Nevada law applies to the breach of contract claim, or any claim in the FAC, the Court finds California law applies. Besides the California choice of law provision for claims regarding the California Policy, this action is here on diversity jurisdiction. FAC at 7. Courts sitting in diversity apply state substantive law—including the state's statute of limitations—and federal procedural law. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) (citation omitted); *In re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir. 2007) (citations omitted).

stacked to determine the limit of insurance coverage available to injured persons.

Cal. Ins. Code § 11580.2(q). California courts have explained that the purpose of these provisions is to prevent "stacking"—"i.e., the practice of adding together the limit of liability for two or more vehicles or two or more policies to determine the total amount of coverage available to injured persons." *Sutton v. Farmers Ins. Exch.*, 35 Cal. App. 4th 1800, 1807 (1995). It is clear to the Court that Plaintiff is attempting to stack the limits of liability for his own multiple insured vehicles to increase coverage for bodily injury sustained by himself as the result of one accident. This is expressly and plainly forbidden by Plaintiff's California Policy, as well as by California law. Regardless of whether Plaintiff had two or more cars insured by Geico, the maximum limit for underinsured motorist coverage for Plaintiff's 2012 accident was $100,000. *See* ECF No. 115-3 at 3, 16.

Geico's payment of $50,000 for underinsured motorist coverage was the maximum possible benefit under the California Policy for Plaintiff's 2012 accident. The $100,000 per person limit was reduced by the $50,000 Farmers Check paid on behalf of Daniels. This is in conformance with the California Policy that states in relevant part:

> When **bodily injury** is caused by one or more motor vehicles under this coverage, our maximum liability for providing underinsured motorists coverage shall not exceed the **insured's** Underinsured Motorists Coverage limits, less the amount paid to the **insured** by or for any person or organization that may be held legally liable for the injury.

*Id.* at 16, ¶ 3 (emphasis in original). Accordingly, the Court finds any allegations that Geico owed Plaintiff more than $50,000 for underinsured motorist coverage to be clearly contradicted by the California Policy.

Plaintiff's arguments are unpersuasive. Plaintiff contends that Geico had instructed Dang not to negotiate the $50,000 Geico Check until Dang returned a release signed by Plaintiff, and when Dang deposited the check but failed to return a release, Geico breached a contract by not recovering the money. ECF No. 140 at 10; *see also* FAC at 97–98. The instruction from Geico to return a signed release is not a contract. There are no allegations

18

that this condition is in the California Policy, nor does the Court find any requirement in the policy. Regardless, Geico may choose to waive a condition it imposed. *See Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970) ("A waiver is an intentional relinquishment or abandonment of a known right or privilege.").

To the extent Plaintiff's breach of contract claim is premised on Geico's refusal to agree to arbitration to determine if Plaintiff's second vehicle raised his underinsured motorists coverage by an additional $100,000, the Court finds it also fails. As discussed above, the California Policy clearly limits Plaintiff's recovery from Geico to $50,000—which Geico paid—regardless of the number of vehicles he insured. Both the California Policy and California law provide for arbitration when the parties cannot agree on the damages amount so that an arbitrator can determine the proper award or judgment. *See State Farm Mut. Auto. Ins. Co. v. Superior Ct.*, 123 Cal. App. 4th 1424, 1431 (2004) (citing Cal. Ins. Code § 11580.2(f)). However, when the insurer has paid the policy limit, an arbitrator could not award any greater relief, and thus, there is no controversy to be arbitrated. *Id.* The Court finds there is no arbitrable issue where Geico has paid the policy limit, and so Plaintiff is not entitled to arbitration. *See id.*

Accordingly, the Court DISMISSES the breach of contract claim against Geico without leave to amend because the allegations of other facts could not cure the deficiency, particularly the determination of the maximum limit and benefit, and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

### B.    Bad Faith

Plaintiff's bad faith claim against Geico is essentially the same as his breach of contract claim and is premised on the same allegations that Geico owed more than the $50,000 it paid under Plaintiff's California Policy for underinsured motorist coverage. FAC at 83–87. Geico argues that the bad faith claim should be dismissed because Geico did not withhold payment and the claim is time-barred by a two-year statute of limitations. ECF No. 115-1 at 15–16.

/ / /

"A covenant of good faith and fair dealing is implied in every insurance contract." *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 885 (1985). "The primary test is whether the insurer withheld payment of an insured's claim unreasonably and in bad faith." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (Ct. App. 1990) (citation omitted). "Thus, there are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Id.*

The Court finds Plaintiff has not sufficiently pleaded a claim of bad faith as to Geico. As discussed above, the Court finds Geico paid the maximum benefit due to Plaintiff on his underinsured motorist coverage in the California Policy. *See supra*, Section IV.A. Therefore, Plaintiff has failed to plead the threshold requirement that benefits due under the policy were withheld, and his bad faith claim must be DISMISSED.[8] *See Love*, 221 Cal. App. 3d at 1151. The dismissal is without leave to amend because the allegations of other facts could not cure the deficiency, particularly regarding the determination of the maximum benefit, and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

### C.    Fraud

Plaintiff alleges many fraudulent actions by Geico, including the following primary allegations: accepted a counterfeit settlement document submitted by Dang with Daniels' insurer Farmers Insurance for the March 2012 accident without verifying its authenticity in order to "settle claim with potential of $250,000.00 for only $50,000.00"; did not include the term "all payees must endorse here" on the back of the Geico Check; and intentionally did not verify that Dang's requested address for receipt of the Geico Check was actually his office "expecting that in the case the check converted Defendant GEICO will just claim we are not responsible under California Supreme Court decision." FAC at 88–95.

---

[8] Because the Court finds the bad faith claim has not been sufficiently pleaded, the Court declines to reach Geico's statute of limitations argument on the bad faith claim.

Geico argues that Plaintiff has failed to adequately allege a claim for fraud and it is barred by the three-year statute of limitations. ECF No. 115-1 at 18–22.

As stated above, to state a claim for fraud, the following elements must be proven: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small*, 30 Cal. 4th at 173 (internal quotation marks and citation omitted). A fraud claim is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See supra*, Section III.B.2.

The Court finds Plaintiff has failed to sufficiently allege the elements for a claim of fraud by Geico. Plaintiff fails to allege a misrepresentation that Plaintiff relied on. The allegations are primarily accusations that Geico acted wrongly rather than made false representations, and none of them allege that Plaintiff relied on any of Geico's actions. Plaintiff also fails to allege Geico's knowledge of falsity or an intent to defraud. The Court has already found that Plaintiff's allegations about the maximum limit and maximum benefit owed to him for underinsured motorist coverage is contradicted by the terms of the California Policy. *See supra*, Section IV.A. Thus, his allegations that Geico potentially owed him $250,000 are not taken as true and cannot be used as knowledge of falsity or intent to defraud. *See Sprewell*, 266 F.3d at 988. Plaintiff also fails to allege that a misrepresentation by Geico caused him damage. Plaintiff alleges that due to Geico's "[f]raudulent refusal to pay benefits on [Plaintiff's] policies" he was unable to pay for medical care. FAC at 95. However, Plaintiff admits that Geico paid $50,000 for his California Policy coverage. FAC at 51. To the extent that Plaintiff alleges that Geico should have paid more than $50,000, the Court has found that to be contradicted by the California Policy. *See supra*, Section IV.A. Accordingly, the Court DISMISSES Plaintiff's fraud claims against Geico for failing to sufficiently plead a valid claim.

The Court also finds the fraud claim against Geico is time-barred. Plaintiff's fraud claims essentially allege that Geico committed fraud by sending only $50,000 to Dang instead of what was due to Plaintiff and enabling Dang to deposit it. The three-year statute

of limitations pursuant to section 338(d) of California's Code of Civil Procedure began to run when Plaintiff discovered he had a cause of action "or, through the use of reasonable diligence, should have discovered it." *Graham-Sult*, 756 F.3d at 743 (citation omitted). Therefore, the Court finds Plaintiff should have discovered he had a fraud claim when he learned that Dang had deposited the $50,000 Geico Check. The Geico Check was deposited on August 12, 2016 but Plaintiff claims Dang concealed the receipt and deposit from Plaintiff. FAC at 40, 51. Plaintiff does not clearly state in the FAC when he discovered Dang had received and deposited $50,000 from Geico, but it was at least no later than August 19, 2016 when Plaintiff wrote a letter to Dang demanding return of $50,000 from the Geico claim and $50,000 from the Farmers settlement. Counterclaim, *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal. January 10, 2020), ECF No. 9 at 6.[9] When Plaintiff learned by August 19, 2016 that Dang had received and deposited $50,000 from the Geico claim, he had "notice of facts sufficient to arouse the suspicions of a reasonable man" because he alleges Geico owed him more than $50,000. *See Graham-Sult*, 756 F.3d at 743 (citation omitted). Plaintiff's fraud claim needed to be filed by August 19, 2019, but it was filed August 5, 2020. Accordingly, the Court DISMISSES the fraud claim against Geico as barred by the statute of limitations. The dismissal is without leave to amend because the allegations of other facts consistent with the FAC could not cure the deficiency, and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

### D.   Negligence

Plaintiff claims Geico acted negligently by issuing the Geico Check to Dang without receiving a settlement release signed by Plaintiff; failing to require Dang to provide proof of his new office address to Plaintiff before processing the Geico Check; failing to include

---

[9] The Court takes judicial notice of its own records. *Author Servs., Inc.*, 804 F.2d at 1523 (citing *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969); *Diamond v. Pitchess,* 411 F.2d 565, 566 (9th Cir.1969)). In the related interpleader case of *Dang v. Pontier* regarding the same settlement funds as the present case, Pontier filed a counterclaim against Dang and attached a copy of the August 19, 2016 letter.

the term "all payees must endorse here" on the back of the Geico Check; and failing to seek return of $50,000 from Dang or Chase due to Plaintiff's lack of endorsement on the Geico Check. FAC at 95–101.

Geico argues that Plaintiff fails to allege a valid claim for negligence, and his claim is barred by the statute of limitations. ECF No. 115-1 at 23–24.

The elements of negligence are duty, breach of duty, proximate cause, and damages. *Artiglio v. Corning Inc.*, 18 Cal. 4th 604, 614 (1998). "Under California law, proximate cause exists if the defendant both (1) in fact caused the injury and (2) could reasonably foresee the risk of injury." *Fed. Deposit Ins. Corp. v. Imperial Bank*, 859 F.2d 101, 103 (9th Cir. 1988) (citing *Powell v. Standard Brands Paint Co.,* 166 Cal.App.3d 357, 363 (1985)).

Plaintiff essentially alleges that Geico's negligent actions enabled Dang to receive and deposit the Geico Check without Plaintiff's signature, resulting in a delay of payment to Plaintiff and "[a]s a result of Defendant GEICO negligent refusal to pay benefits on Plaintiff Pontier policies," Plaintiff has been unable to pay for his medical care. FAC at 100–01. Geico argues that the law does not impose this kind of duty on an insurance company.

The Court agrees with Geico. An attorney in California has authority "[t]o receive money claimed by his client in an action or proceeding during the pendency thereof, or after judgment, unless a revocation of his authority is filed, and upon the payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment." Cal. Civ. Proc. Code § 283. The California Supreme Court has stated that "where an agent authorized to collect a debt owing his principal accepts in lieu of cash a valid check payable to the agent, the debtor is discharged upon payment of the check, although the agent absconds with the proceeds, since payment to the agent is equivalent to payment to the principal." *Navrides v. Zurich Ins. Co.*, 5 Cal. 3d 698, 706 (1971) (citation omitted). The court in *Navrides* found this applies when a check is made payable to the attorney alone or to the attorney and client. *Id.* at 711–12 (citing with approval *Zidek v. W. Penn Power Co.,*

145 Pa. Super. 103 (1941)). In the present case, Plaintiff cites no legal authority requiring Geico to include the term "all payees must endorse here" on the back of the Geico Check. Thus, there is no irregularity with the Geico Check that was made payable to Dang and Plaintiff. Once the check was deposited and the $50,000 charged to Geico, Geico was discharged as to the amount owed to Plaintiff. *See id.* at 706, 711–12.

Plaintiff has failed to allege the element of proximate cause because Geico paid the amount owed to Plaintiff and then was discharged as to the claim. There are no allegations that Geico delayed paying the claim. Any resulting delay in Plaintiff receiving payment from Dang cannot have been proximately caused by Geico after it timely paid Plaintiff's claim and was discharged. In fact, Plaintiff alleges that Dang disappeared for a number of months after he deposited the Geico Check, refused to disburse funds to Plaintiff until he satisfied medical liens, and then filed a complaint in interpleader, resulting in the disbursement delay. *E.g.*, FAC at 115–16. The proximate cause element is missing because Plaintiff fails to allege that Geico both in fact caused the delayed payment and could reasonably foresee the risk of delayed payment. *See Imperial Bank*, 859 F.2d at 103. Accordingly, the Court DISMISSES the negligence claim against Geico for failure to allege a valid claim. The dismissal is without leave to amend because the allegations of other facts consistent with the FAC could not cure the deficiency, particularly regarding the discharge of Geico after the check was deposited and charged to Geico, and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

The Court also finds Plaintiff's negligence claim is time-barred. The statute of limitations for a general negligence claim is two years. Cal. Civ. Proc. Code § 339(1); *Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1244 (E.D. Cal. 2016). It "begins to run after both (1) all of the elements of the negligence claim are complete and (2) plaintiff knew or should have known of the claim." *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1251 (E.D. Cal. 2010) (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). Plaintiff alleges that Geico's negligence enabled Dang to receive and deposit the Geico Check without Plaintiff's endorsement, which delayed payment to

Plaintiff and caused him harm. FAC at 100-01. Plaintiff's negligence claim was thus complete after he knew Dang had received and deposited the Geico Check for less than the amount he expected and he had suffered a delay in receiving payment from it. That occurred at least by August 17, 2017, when Plaintiff submitted an economic crimes complaint about Dang to the San Diego District Attorney office, claiming that Dang moved out of his office without disbursing client funds of $50,000 from Farmers Insurance and $50,000 from Geico for Plaintiff's March 2012 car accident, and had negotiated the two insurance settlement checks without Plaintiff's required endorsement as a payee. FAC at 8–9. Prior to the complaint to the district attorney, Plaintiff had experienced a delay in payment because he had sent letters to Dang's office between August 2016 and August 2017 that went unanswered, and did not learn until September 13, 2017 that Dang had closed his office. *Id.* at 230. The statute of limitations began to run on August 17, 2017, but Plaintiff's negligence claim was filed almost three years later on August 5, 2020. Accordingly, the Court DISMISSES the negligence claim against Geico as barred by the statute of limitations. The dismissal is without leave to amend because the allegations of other facts consistent with the FAC could not cure the deficiency, and amendment would be futile *See DeSoto*, 957 F.2d at 658 (citation omitted).

## V.    DANG MOTION TO DISMISS

Plaintiff asserts the following claims against Dang: (1) conversion as to the Farmers Check [FAC at 35–36, 206–16]; (2) conversion as to the Geico Check [FAC at 38–39]; (3) breach of contract counts I–II [FAC at 37–38, 40–56]; (4) fraud as to the Farmers Check [FAC at 36–37]; (5) fraud as to the Geico Check [FAC at 39–40, 49–67, 88–95]; (6) fraud as to Phia Group and Dang [FAC at 169–97]; (7) fraud as to Kim and Dang [FAC at 198–206]; (8) fraud and Fair Debt Collection Practices Act ("FDCPA") or California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") counts 2–6 [FAC at 103–04, 113–30]; (9) FDCPA or Rosenthal Act counts 7–15 [FAC at 130–32, 135–50]; and (10) RICO violations [FAC at 151–69].

/ / /

**A.    Issue Preclusion**

Dang argues that Plaintiff's claims of conversion, fraud, and FDCPA violations should be dismissed because they are barred by issue preclusion, also known as collateral estoppel. ECF No. 116-1 at 12–15.

As a preliminary matter, Dang requested the Court take judicial notice of five documents filed in the related interpleader case of *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal.). ECF Nos. 116-2. The Court has already taken judicial notice of two of the documents: (1) Order Granting Plaintiff's Motion for Interpleader Discharge and Interpleader Disbursement filed on December 15, 2020 [ECF No. 113-2 at 5–10] and (2) Order Granting in Part and Denying in Part Counterdefendant Dang's Motion for Summary Judgment and Denying Counterplaintiff Pontier's Amended Motion for Summary Judgment filed December 18, 2020 [ECF No. 113-2 at 12–41]. *See supra*, Section III.A.2. The Court may take judicial notice of its own records in the related case, and also finds the orders are readily verifiable matters of public record and the proper subject of judicial notice. *See Author Servs., Inc.*, 804 F.2d at 1523, *amended,* 811 F.2d 1264 (9th Cir. 1987), and *overruled in part on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997) (citations omitted); *Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6. The three additional documents in the interpleader action are as follows: (1) Defendant Pontier's Response to Plaintiff Dang's Motion for Summary Judgment as to Defendant Pontier's Counterclaims filed on December 1, 2020 [ECF No. 116-2 at 36–58 ]; (2) Defendant Pontier's Amended Motion for Summary Judgment filed on June 1, 2020 *nunc pro tunc* [ECF No. 116-2 at 68–83]; and (3) Defendant Pontier's Response to Plaintiff Dang's Opposition to Motion for Summary Judgment filed on July 24, 2020 [ECF No. 116-2 at 85–110]. The Court **GRANTS IN PART AND DENIES IN PART** Dang's Request for Judicial Notice by granting the request as to the December 15, 2020 Order and the December 18, 2020 Order, but denies the request as to the three additional documents because they are not necessary for the Court to reach a decision.

/ / /

The doctrines of res judicata and collateral estoppel prevent parties from relitigating issues or disputes that have already been litigated and decided. "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Grondal v. United States*, 21 F.4th 1140, 1163 (9th Cir. 2021). Meanwhile, "[i]ssue preclusion, or collateral estoppel, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960, 963 (9th Cir. 2020) (internal quotation marks and citations omitted). "Collateral estoppel applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits. *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012) (citation omitted).

The Court finds Plaintiff's claims of conversion, fraud, and FDCPA violations against Dang are barred by issue preclusion. In the related interpleader case *Dang v. Pontier*, these identical issues were brought in Pontier's counterclaim and actually litigated and decided by the Court in the Order Granting in Part and Denying in Part Counterdefendant Dang's Motion for Summary Judgment and Denying Counterplaintiff Pontier's Amended Motion for Summary Judgment ("MSJ Order"). ECF No. 113-2 at 12–41. The parties had a full and fair opportunity to litigate the issues and submitted extensive briefs for their competing motions for summary judgment, including oppositions and replies. *See id.* at 12; ECF No. 116-2 at 36–58, 68–110. The issues of conversion, fraud, and FDCPA violations were necessary to the MSJ Order issued by the Court granting in part Dang's motion for summary judgment and denying Pontier's motion for summary judgment. ECF No. 113-2. In the dispositive MSJ Order, the Court granted Dang's motion for summary judgment as to Pontier's counterclaims of conversion, fraud, FDCPA or Rosenthal Act violations, as well as legal malpractice and medical malpractice. *Id.* at 31, 34, 38–40.

Plaintiff does not address the argument that these issues have already been adjudicated in Dang's favor, but instead argues that the Court did not have jurisdiction for the related interpleader case. ECF No. 147 at 2, 11. Plaintiff's argument fails however as the Court issued an order in September 2024 denying Plaintiff's motion to dismiss for lack of subject matter jurisdiction. Order Denying Motion to Dismiss and Denying Motion for Change of Venue, *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal. Sept. 30, 2024), ECF No. 220; *see also* Order Granting Defendant Pontier's Motion for Default Judgment and Denying Without Prejudice Request for Damages, *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal. July 22, 2020), ECF No. 98 at 6 (finding the court had jurisdiction over the interpleader complaint). Accordingly, the Court DISMISSES Plaintiff's claims of fraud, conversion, and FDCPA or Rosenthal Act violations that were previously adjudicated "in a valid determination essential to the prior judgment" as barred by issue preclusion. *See Scafidi*, 966 F.3d at 963 (internal quotation marks and citations omitted). The dismissal is without leave to amend because the allegations of other facts could not change the finding of issue preclusion, and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

### B.    Breach of Contract and Duplicate Claims

Plaintiff alleges that Dang breached the retainer agreement by failing to disburse the settlement funds from the Farmers Check and Geico Check within six weeks of initial disbursement. FAC at 37–38, 41, 48, 56.

Dang argues that Plaintiff's breach of contract claim is barred by the interpleader discharge in the related case and the statute of limitations. ECF No. 116-1 at 15–16.

The Court does not find at this stage that Plaintiff's breach of contract claim is barred by the interpleader discharge of the settlement funds. In the case cited by Dang in support of the argument, the Ninth Circuit court affirmed a finding on summary judgment that in light of an insurer's "good faith belief that it faced the possibility of multiple claims, it did not act unreasonably in failing to pay [the insured's] claim" and satisfied its obligation under the contract to pay the insured's policy benefits by instituting the interpleader action.

*Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999). It does not appear to be a per se rule that instituting interpleader bars any breach of contract claim, but instead requires a determination of whether the holder of the funds acted reasonably in failing to pay them. The Court cannot make that determination on a motion to dismiss.

Section 340.6 of California's Code of Civil Procedure states that "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." Cal. Civ. Proc. Code § 340.6(a). Except that this period shall be tolled during the time that "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." *Id.* § 340.6(a)(2). "To determine whether the continuous representation exception applies, the inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated." *Nguyen v. Ford*, 49 Cal. App. 5th 1, 12 (2020), *as modified* (May 13, 2020) (internal quotation marks and citation omitted). The test is objective and tolling ends when "a client has no *reasonable* expectation that the attorney will provide further legal services." *Id.* at 14 (internal quotation marks and citation omitted). "Continuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence of an ongoing *mutual* relationship and of activities in furtherance of the relationship." *GoTek Energy, Inc. v. SoCal IP L. Grp., LLP*, 3 Cal. App. 5th 1240, 1247–48 (2016) (citation omitted). Although determining whether the continuous representation exception applies to toll the statute of limitations is generally a question of fact, it "can be decided as a question of law if the undisputed facts can support only one conclusion." *Nguyen*, 49 Cal. App. 5th at 14 (internal quotation marks and citation omitted).

The Court finds the one-year statute of limitations and tolling exceptions of section 340.6 applies to Plaintiff's breach of contract claims. In alleging that Dang violated the

retainer agreement, the claim necessarily depends on proof that he "violated a professional obligation in the course of providing professional services," which renders section 340.6 applicable. *See Foxen v. Carpenter*, 6 Cal. App. 5th 284, 292 (2016) (quoting *Lee v. Hanley*, 61 Cal. 4th 1225, 1237 (2015)). Plaintiff was aware of the breach of contract by August 2017 at the latest, when he submitted the economic crimes complaint about Dang to the district attorney's office. FAC at 8–9; *see supra*, Section IV.D. Plaintiff fired Dang for abandonment of representation on September 6, 2017. FAC at 56. Normally a termination would mean that Plaintiff could have no reasonable expectation that Dang would provide further legal services. *See Nguyen*, 49 Cal. App. 5th at 13. However, Dang wrote letters to Plaintiff in December 2017 and April 2018 attempting "to collect time barred medical debt claims" from Plaintiff by requesting consent to deduct the claims from client funds. *Id.* at 107–08. In a letter dated September 25, 2018, medical provider Phia Group stated it entered into a written agreement with Dang to reimburse it $35,000. *Id.* at 45. These letters indicate Dang continued to represent Plaintiff regarding the disbursement of the settlement funds by negotiating the liens. *See Gurkewitz v. Haberman*, 137 Cal. App. 3d 328, 334 (Ct. App. 1982) (finding attorney continued to represent his client by negotiating with opposing counsel to reduce a bill for his client). Plaintiff alleges the last action of representation by Dang was on October 29, 2019 when Dang mailed a letter to him enclosing a check dated October 29, 2019 for $10,438.13, which was the amount in excess of what was claimed to be in dispute in the interpleader case. FAC at 254–54. Plaintiff alleges that Dang stated that he was in possession of the excess amount and was distributing it to Plaintiff pursuant to the contingency fee agreement. *Id.* at 254.

The Court finds Plaintiff has adequately pleaded that the tolling exception of continuous representation applies. Although Plaintiff could not have had any reasonable expectation that Dang would provide further legal services after Plaintiff fired him for abandonment of representation in September 2017, Dang continued to negotiate with the medical providers. Dang's efforts to negotiate the liens constituted continuous representation. *See Gurkewitz*, 137 Cal. App. 3d at 334. Plaintiff alleges the October 2019

check and letter constitute a legal service made pursuant to the contingency fee agreement. Dang argues that the October 2019 disbursement was not a legal service provided to Plaintiff for his benefit, but instead a disbursement necessary for Dang to proceed with the interpleader suit. ECF No. 116-1. If the October 2019 action is evidence of continuous representation, then the tolling exception applies, and Plaintiff's breach of contract claim was timely filed within the one-year statute of limitations. The Court finds reasonable minds could differ as to whether the October 2019 check was a task Dang completed for his own benefit or a performance of professional service for Plaintiff. *See Nguyen*, 49 Cal. App. 5th at 14 (finding that although the determination of whether the continuous representation exception applies is generally a question of fact, it "can be decided as a question of law if the undisputed facts can support only one conclusion." (internal quotation marks and citation omitted)).

Accordingly, the Court DENIES Dang's motion to dismiss the breach of contract claim as time-barred or as barred by the interpleader discharge.

However, Dang raises an alternative argument that the Court agrees with. Dang contends that Plaintiff's claims as to Dang in this case are identical to Plaintiff's counterclaim and allegations against Dang in the related first-filed interpleader case, and as such, is a "blatant abuse of the judicial process and a waste of judicial resources and should not be condoned." ECF No. 116-1 at 6. Plaintiff argues that the related interpleader case does not have federal jurisdiction, which the Court has already noted has been argued and denied. *See supra*, Section V.A. The Court finds the duplicative causes of action against Dang are subject to the doctrine of claim-splitting.

"The doctrine of claim-splitting is the notion that a party is 'not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible.'" *Cook v. C.R. England, Inc.*, No. CV 12-3515-GW CWX, 2012 WL 2373258, at *3 (C.D. Cal. June 21, 2012) (quoting *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894)). "The

ultimate objectives of the rule are to protect the defendant from being harassed by repetitive actions based on the same claim and promote judicial economy and convenience." *Graham v. Dupont De Nemours, Inc.*, No. 2:24-CV-09444-FLA (SKX), 2025 WL 464319, at *2 (C.D. Cal. Feb. 11, 2025) (citing *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995); Restatement (Second) of Judgments § 24). "The rule also exists to allow district courts to manage their docket." *Id.* (internal quotation marks and citation omitted). To determine if a second suit is duplicative to the first, courts "examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007) (citing *United States v. Haytian Republic*, 154 U.S. 118, 124 (1894)).

In this case, the Court is considering only the causes of action against Dang and not the entire suit. Breach of contract is the remaining cause of action, after the others were dismissed. *See supra*, Section V.A; *infra*, Section V.C. The Court finds the breach of contract claim in the present action and in the related interpleader, as a counterclaim, are both brought by Plaintiff against Dang and assert substantially the same acts of breach of contract for failing to disburse the Geico Check and Farmers Check funds, except that the counterclaim also includes breach for abandonment and refusal to provide legal representation at the scheduled trial. *Compare* FAC at 37-38, 40–41 *with* Counterclaim, *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal. Jan. 10, 2020), ECF No. 9. They seek the same types of relief—actual and punitive damages—except that the counterclaim seeks a greater amount than the present claim. *Compare* FAC at 38, 41 *with* Counterclaim, *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal. Jan. 10, 2020), ECF No. 9. They "arise out of the same transactional nucleus of facts" regarding the disputed deposit and disbursement of the Farmers Check and Geico Check and the same retainer agreement. *Compare* FAC at 41–56 *with* Counterclaim, *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal. Jan. 10, 2020), ECF No. 9; *Adams*, 487 F.3d at 689 (citation omitted). The "rights established by the judgment in the first action would be destroyed or impaired by a judgment in the present action" because they would both impact Dang in the same way. *See Adams*, 487 F.3d

at 691. The Court finds the counterclaim and the cause of action in the present case involve the same breach of contract claim by Plaintiff against Dang, and accordingly DISMISSES the breach of contract claim against Dang in the present case.[10] See *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." (citation omitted)); *Adams*, 487 F.3d at 692 ("Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'" (citation omitted)). The dismissal is without leave to amend because the allegations of other facts could not change the finding of duplicative claims, and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

## C.    RICO Violation

In a section of the FAC titled "Violation Federal RICO Statute" and "Violation California RICO Statute," Plaintiff alleges that Dang and Chase violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by fraudulently allowing the Farmers Check and Geico Check to be deposited to Dang's client trust account at Chase without all required signatures, "which constitutes conspiracy, conversion, fraud."[11] FAC at 152. In a different section of the FAC, Plaintiff also alleges that Dang committed mail fraud by mailing "time barred medical claims" to Plaintiff that he had negotiated with Plaintiff's

---

[10]  Plaintiff's counterclaim for breach of contract against Dang has survived motion for summary judgment in the interpleader suit and does not have a final judgment.

[11]  Plaintiff vaguely refers to the "California RICO Statute" twice in conjunction with asserting a federal civil RICO claim. FAC at 152, 153. The Court assumes Plaintiff is referring to the California Control of Profits of Organized Crime Act. Cal. Penal Code § 186. The statute is intended to be used by prosecutors to punish and deter criminal activities of organized crime through forfeiture of profits. Cal. Penal Code § 186.1. It does not specify a private right of action. *See* Cal. Penal Code §§ 186–186.8. Therefore, the Court DISMISSES any California RICO claims against any defendants.

medical providers, misrepresenting them as valid claims, and advising that if Plaintiff did not approve distribution from client funds for the medical claims, all of Plaintiff's client funds would be withheld and a federal interpleader suit initiated. *Id.* at 105–27. Dang argues that Plaintiff fails to sufficiently allege any of the elements of a RICO violation. ECF No. 116-1 at 17; ECF No. 149 at 6.

"To establish a civil RICO claim, a plaintiff must establish: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted); *see also* 18 U.S.C §§ 1962(c), 1964(c). The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to civil RICO claims based on fraud. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).

As a preliminary matter, the Court notes that Plaintiff fails to specify which subsection of RICO, 18 U.S.C. § 1962, he is invoking. "Because subsections (a)–(d) prohibit different types of conduct and are not applied in identical fashion," Plaintiff's omission makes it "impossible for the defendants to adequately respond" to the allegations. *Anderson v. Gibson, Dunn & Crutcher*, 985 F.2d 571, 571 & n.1 (9th Cir. 1993). This failure alone is grounds for dismissal. *Id.*

The Court finds deficiencies with the predicate acts element. "A pattern of racketeering activity . . . requires at least two predicate acts, which include any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in [narcotics], that is an offense under state law and punishable by imprisonment for more than one year, as well as any act indictable under certain enumerated federal criminal statutes." *Malasky v. Esposito*, No. 16-CV-04102-DMR, 2019 WL 79032, at *8 (N.D. Cal. Jan. 2, 2019), *aff'd,* 781 F. App'x 643 (9th Cir. 2019) (internal quotation marks and citations omitted).

To the extent that Plaintiff alleges that the predicate acts are conversion or grand theft [FAC at 152, 161], neither can serve as a predicate act for RICO. *See id.* ("Neither

common law fraud nor theft is a crime constituting a predicate act for purposes of establishing a pattern of racketeering activity." (citation omitted)); *Flores v. Emerich & Fike*, No. 1:05-CV-0291 AWI DLB, 2009 WL 900738, at *8 (E.D. Cal. Mar. 31, 2009) (finding conversion is not a predicate act).

To the extent Plaintiff claims mail fraud is the predicate act, it is not sufficiently pleaded. Mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 qualify as predicate acts and contain the following elements: "(A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citation omitted). Plaintiff's allegations that the medical claims Dang wrote about in the letters to Plaintiff are time-barred are legal conclusions and also contradicted by the judicially-noticed order on summary judgment in the related interpleader case. *See* ECF No. 113-2 at 31; *Iqbal*, 556 U.S. at 678. That order recognized that Plaintiff signed a contingency fee agreement that included a medical lien provision to deduct remaining balances from the amount recovered and pay it directly to the medical creditor. ECF No. 113-2 at 31. The Court does not need to accept the conclusory or contradicted allegations as true. *See* ECF No. 113-2 at 31; *Sprewell*, 266 F.3d at 988. Without allegations that the medical liens are time-barred as to any method of recovery, there is no formation of a scheme to defraud or the specific intent to defraud. *See Eclectic Properties E., LLC*, 751 F.3d at 997. Furthermore, Dang sent the letters in an effort to settle disbursement issues with Plaintiff and avoid filing a federal interpleader action. As such, they do not constitute mail fraud for the purposes of RICO. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006) (applying the *Noerr-Pennington* doctrine and holding "that RICO and the predicate statutes at issue here do not permit the maintenance of a lawsuit for the sending of a prelitigation demand to settle legal claims that do not amount to a sham.").

Additionally, the Court finds Plaintiff has not sufficiently alleged an injury cognizable under RICO, which is required to establish standing. See *Limcaco v. Wynn*, No. 220CV11372RSWLMAAX, 2021 WL 5040368, at *15 (C.D. Cal. Oct. 29, 2021),

*aff'd,* No. 21-56285, 2023 WL 154965 (9th Cir. Jan. 11, 2023) (citation omitted). The Ninth Circuit has explained the injury element as follows:

> The "fifth element includes two related components. First, a civil RICO plaintiff must show that his injury was proximately caused by the [prohibited] conduct. Second, the plaintiff must show that he has suffered a concrete financial loss." *Fireman's Fund Ins. Co. v. Stites,* 258 F.3d 1016, 1021 (9th Cir. 2001) (citation omitted). To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest. *See Oscar v. University Students Coop. Ass'n,* 965 F.2d 783, 785 (9th Cir.1992) (en banc). Congress enacted RICO "to combat organized crime, not to provide a federal cause of action and treble damages" for personal injuries. *Id.* at 786.

*Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002). Plaintiff alleges that he was "defraud[ed]" of "at least $50,000.00 on or about 11/20/2015 th[e]n again $50,000.00 on or about August 12, 2016." FAC at 159. Plaintiff appears to allege that by allowing the Farmers Check and Geico Check to be deposited in his attorney's trust account without his signature, he was deprived of $100,000. However, the related interpleader case initiated on August 13, 2019 involving Plaintiff and his medical providers with liens on the settlement funds shows that Plaintiff's interest in the settlement funds from the Farmers Check and Geico Check was deposited in Dang's client trust account, subsequently deposited with the Court as part of the interpleader action, and then ordered to be disbursed to Plaintiff.[12] ECF No. 113-2 at 5–10; 30–31. Plaintiff was not deprived of the funds, so he did not suffer a concrete financial loss, and thus has not alleged an injury cognizable under RICO. *See Chaset*, 300 F.3d at 1086–87; *Fireman's Fund Ins. Co.*, 258 F.3d at 1021. To the extent Plaintiff alleges he could have refused to endorse the settlement checks and proceeded to trial for claims of up to $250,000 against Geico, this is speculative in two respects. FAC at 160. It is speculative that Plaintiff would have gone to trial or that he

---

[12] Plaintiff acknowledges that he signed a contingency fee agreement with Dang and that he had liens from medical providers. *E.g.,* FAC at 182, 187,195.

would have prevailed, and thus is not a concrete financial loss. *See Keel v. Schwarzenegger*, No. CV0807591RMTVBK, 2009 WL 1444644, at *6 (C.D. Cal. May 19, 2009) ("A plaintiff cannot maintain a RICO claim where the loss he has suffered is 'purely speculative.'" (citation omitted)). Plaintiff's claim that he would have refused to endorse the settlement checks is also contradicted by Plaintiff's counterclaim in the related interpleader case, in which Plaintiff alleges that he demanded the funds from the Farmers Check and Geico Check the day after Dang deposited each of them. Counterclaim, *Dang v. Pontier*, No. 19cv1519-LL-DDL (S.D. Cal. January 10, 2020), ECF No. 9 at 1–2.

Finally, to the extent that Plaintiff claims conspiracy as a RICO claim, it also fails. "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962. Because the Court finds Plaintiff has failed to sufficiently plead a substantive violation of RICO, his conspiracy claim is precluded. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Accordingly, Plaintiff has failed to sufficiently allege a valid claim for RICO and the Court DISMISSES the RICO claims as to Dang and Chase.[13] The dismissal is without leave to amend because the allegations of other facts consistent with the FAC, particularly the lack of a concrete financial loss, could not cure the deficiencies and amendment would be futile. *See DeSoto*, 957 F.2d at 658 (citation omitted).

## VI. LEAVE TO AMEND

In addition to the reasons stated above for denying leave to amend, the Court finds an additional reason why leave to amend in this case is not warranted. Plaintiff already had an opportunity to amend its complaint, and it was still insufficiently pleaded. After Defendants Chase and Geico filed their motions to dismiss the original complaint in November 2020, this action was transferred to this district and subsequently stayed. In March 2024, Plaintiff filed a motion for leave to amend the complaint to separate claims

---

[13] The failure to plead required elements for RICO applies equally to the RICO claims against Chase as against Dang, and so they must also be dismissed.

and indicate the defendants implicated in each claim, as well as to make changes upon review of the motions to dismiss filed by Chase and Geico. ECF No. 91 at 3. When the Court granted Plaintiff's motion to amend the complaint in order "to separate the claims and indicate which claims are asserted against which Defendants," it included specific instructions about the proper formatting, such as numbering paragraphs, and requirements of pleading, such as the use of simple, concise, and direct allegations. ECF No. 102. When Plaintiff filed the FAC in May 2024, it had ballooned from 32 pages for the original complaint to 256 pages lacking numbered paragraphs, conciseness, and a version showing the changes made, as required by the Court's order, local rules, and the Federal Rules of Civil Procedure. Plaintiff failed to follow the Court's order with express instructions about the amended complaint and the Court lacks confidence in Plaintiff's ability to cure any pleading deficiencies. Also, the motions to dismiss the original complaint contain similar arguments about the conversion, fraud, and bad faith claims as the present Motions to Dismiss the FAC. *Compare* ECF Nos. 36 at 8–10, 11; 9 at 7–9 *with* ECF Nos. 113 at 10–15, 15–16; 115-1 at 15–22. That Plaintiff had an opportunity and more than sufficient time to correct its deficiencies in the FAC but failed to do so is "a strong indication that [it had] no additional facts to plead." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009); *see also Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Rsrv., N. Dakota & S. Dakota v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (citation omitted)). Accordingly, the Court finds amendment would be futile. *See Desoto*, 957 F.2d at 658 (citation omitted).

## VII.  CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

1.      The Court **GRANTS** Chase's Motion to Dismiss and dismisses all claims against Chase with prejudice.

/ / /

2.      The Court **GRANTS** Geico's Motion to Dismiss and dismisses all claims against Geico with prejudice.

3.      The Court **GRANTS** Dang's Motion to Dismiss and dismisses all claims in this action against Dang with prejudice.

**IT IS SO ORDERED.**

Dated:  March 26, 2025

_____

Honorable Linda Lopez
United States District Judge